**New Deal Realty LLC v 684 Owners Corp.**

2024 NY Slip Op 33156(U)

September 9, 2024

Supreme Court, New York County

Docket Number: Index No. 652893/2020

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:     HON. ARLENE P. BLUTH                    PART                    14

*Justice*

----------------------------------------------------------------------------X

NEW DEAL REALTY LLC,

Plaintiff,

- v -

684 OWNERS CORP., YANNIS BAKOS, FELIX RUO,
BRIAN GLEASON, ALEXANDRA SCOTT, ROBERTA
GOSS, TONY CURTIS, KLEIMAN & WEINSHANK LLP,
WILKIN & GUTTENPLAN, P.C.

Defendant.

----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 652893/2020 |
| MOTION DATE | 07/31/2024 |
| MOTION SEQ. NO. | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 68, 69, 70, 71, 72, 73, 74, 75, 76, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96

were read on this motion to/for                    SANCTIONS                    .

Plaintiff's motion for an order imposing sanctions against defendant 684 Owners Corp. ("684") is denied.

## Background

In this action, plaintiff, a commercial tenant, claims it was overcharged rent for many years. Plaintiff entered a commercial lease with defendant 684, a cooperative, on November 15, 1994. Section 4.2 of the lease provides that plaintiff's rent was calculated as follows: "the amount by which (A) 24% of Landlord's Qualified Income for that year (excluding, however, amounts attributable to any period prior to the effective date of this lease) exceeds (B) so much of Landlord's gross income for that year as is neither Qualified Income nor rent under this lease," (NYSCEF Doc. No. 57 at 3 ¶ 4.2). According to the lease, qualified income included all gross income of 684 derived from the tenant stockholders (id. at 7 ¶ 6.2.2). In other words,

[* 1]

whatever the tenant stockholders paid toward 684, 24% of said amount constituted the plaintiff's rental payment.

Plaintiff insists that there is a carve-out—it insists that the amounts 684 collects and spends for capital improvements have to be removed before the aforementioned 24% rent charge is calculated. Put another way, plaintiff admits it has to pay 24% of the money needed to maintain the building (i.e., taxes and fuel) but that it need not pay money for capital improvement projects. It claims that after 2013, 684 stopped giving credits to plaintiff despite the fact that capital improvements continued; plaintiff argues it made excess rent payments totaling over $200,000.

Plaintiff moves for sanctions on the ground that 684 is deliberately withholding documents it was ordered to produce. Specifically, this Court issued an order in March 2024 stating that "684 Owners must take this seriously and fully comply with this order and timely produce, in legible form, all financial documents demonstrating payments made to engineers, architects, and consultants ("professionals") from 2008 to 2019; this includes the contracts with the professionals, the invoices from the professionals, proof of payments to the professionals and all other back up to show why each was hired, what each did and how and when each was paid. It should be organized by professional and the sum of each professional's paid bills must equal the amount reportedly paid to professionals each year" (NYSCEF Doc. No. 65).

Plaintiff includes an affidavit from one of its managing members in which he (Mr. Shnayer) contends that it should be relatively easy for 684 to produce the records requested. Mr. Shnayer explains that he also lives in the building and was the treasurer for 684's board for about 14 years. Mr. Shnayer observes that 684 uses a managing agent ("Andrews") to handle its day-to-day operations and that a spreadsheet of receipts and disbursements is created each year. He

insists that 684 keeps its books on a cash basis and that means its expenses (including payments to professionals) are recorded in records at the time the payment is made not when the work is performed. Mr. Shnayer insists that Andrews should be able to produce reports that show all payments made to professionals during the relevant period with backup for each payment (such as invoices and a contract) as that is how 684 kept its accounting records.

In opposition, 684 argues that it produced over 3,500 pages of backup documentation on May 2, 2024 but that plaintiff is still unsatisfied. 684 claims that plaintiff relied upon financial audit reports prepared by defendant Kleiman & Weinshank, LLP ("K&W"), 684's former accountant. 684 argues that plaintiff insisted that the expenditure figures in the May 2024 production did not match K&W's records. 684 claims that it then engaged in an internal search for additional documentation but concluded that "it did not have access to the documents and categorizations that K&W used to prepare the financial audit reports as the calculated numbers from the Co-op's records did not match the numbers in the financial audit reports for 10 of the 12 fiscal years in question" (NYSCEF Doc. No. 79). 684 demanded that K&W produce the documents demanded by plaintiff as 684's former accountant.

684 claims that it believes that it has produced all of the relevant documentation but does not know how K&W prepared the financial reports and stresses that its board members are lay people who are unable to opine about K&W's accounting methods. 684 points to an affidavit of due diligence it submitted to plaintiff dated July 12, 2024 that claims it has produced all relevant documents (NYSCEF Doc. No. 92). This affidavit also insists that 684's board is not aware how its accountant categorizes professional fees when preparing audit reports from 2008-2019 and so that explains the disparities between the professionals' fees in the audit reports and 684's production.

**652893/2020   NEW DEAL REALTY LLC vs. 684 OWNERS CORP.**                                    **Page 3 of 4**
   **Motion No.  003**

[* 4]

**Discussion**

The Court denies plaintiff's motion for sanctions at this time. To be sure, plaintiff is correct to inquire about the apparent discrepancy between the audit reports and the documentation it received from 684. But that issue must be fully explored before the Court will consider issuing sanctions. The fact is that K&W[1] is a party in this case and can answer questions concerning the aforementioned discrepancy through discovery or at a deposition. 684 noted that its board is comprised of lay people, not accountants, and so this Court cannot sanction 684 for not being able to offer an explanation for why reports prepared by an accountant do not match up with the supporting documentation.

Accordingly, it is hereby

ORDERED that plaintiff's motion for sanctions is denied. See NYSCEF Doc. No. 78 concerning the next conference.

| 9/9/2024 | | | |
|---|---|---|---|
| **DATE** | | | **ARLENE P. BLUTH, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

---

[1] 684 explains that its prior accountants were initially defendant Wilkin & Guttenplan, P.C. which then became a division of defendant K&W in 2018.

**652893/2020   NEW DEAL REALTY LLC vs. 684 OWNERS CORP.**                    **Page 4 of 4**
**Motion No.  003**